UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                          Bankruptcy No. 10-30125
                                                                                                Chapter 7
Thomas J. and Audrey A. Passa,
F/D/B/A MiniFirst d/b/a Cigar Lounge,

                    Debtors.
_____/

**MEMORANDUM AND ORDER**

This case is before the Court on creditor Gate City Bank's (the Bank) motion to lift the automatic stay. On May 5, 2010, Debtors Thomas J. and Audrey A. Passa filed an objection to the Bank's motion for relief from the automatic stay. On May 13, 2010, the Bank filed its brief in support of its motion. On May 14, 2010, Debtors filed their response brief. A hearing was held on May 18, 2010.

FINDINGS OF FACT

The facts in this matter are not disputed. In 2007, Debtor Audrey Passa signed a note with the Bank financing a 2007 Chevrolet HHR. The Bank held the Certificate of Title on the vehicle when it was originally financed. On January 8, 2010, Debtor Audrey Passa refinanced the 2007 HHR with the Bank and signed a note and security agreement with a principal amount of $12,046.82. On January 22, 2010, following the refinancing, the Bank's agent signed the lien release on the Certificate of Title and returned the title to Debtors. Debtors have the original Certificate of Title in their possession. On February 11, 2010, Debtors filed a voluntary chapter 7 bankruptcy petition. On Schedule D, Debtors list the 2007 HHR with a claim amount of $12,100.00 and indicate that the security interest is disputed. Subsequently, the Bank requested

and received a duplicate copy of the Certificate of Title, dated April 20, 2010, from the North Dakota Department of Transportation.

CONCLUSIONS OF LAW

The dispositive issue in this case is whether the Bank has a perfected security interest in the vehicle.

Chapter 35-01 of the North Dakota Century Code delineates the general lien provisions of when a security interest in a vehicle is valid. Section 35-01-05.1(1), N.D.C.C., provides:

> No security interest, including a security interest under chapter 41-09, in a vehicle, including a manufactured home, which is not inventory held for sale is valid as against subsequent purchasers and encumbrances of the property in good faith and for value unless the security interest is clearly indicated upon the certificate of title to the vehicle or unless such certificate of title is in the possession of the secured party.

N.D.C.C. § 35-10-05.1.

This Court has reviewed this statute on a number of occasions. See In re Chapman, 113 B.R. 561 (Bankr. D.N.D. 1990); In re Halvorson, 102 B.R. 736 (Bankr. D.N.D. 1989); In re Star Safety, Inc., 39 B.R. 755 (Bankr. D.N.D. 1984). The Court in In re Chapman held that section 35-01-05.1 expressly provides that no security interest is valid unless the security interest is clearly indicated upon the certificate of title to the vehicle or unless such certificate of title is in possession of the secured party. 113 B.R. at 562. Further, the Court stated that it will continue to adhere to its position taken in In re Halvorson and In re Star Safety, Inc., that section 35-01-05.1 is the exclusive method by which a security interest in a motor vehicle may be perfected. Id. at 563.

The Bank argues that although it signed the lien release and placed the certificate of title in Debtor's possession it has a valid security interest because Debtor failed to mail or deliver the certificate and fee to the department of transportation pursuant to section 39-05-16.1. Section 39-05-16.1(1)(b) provides:

> 1.  Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, the lienholder, within ten days after demand and in any event within thirty days of the satisfaction, shall execute a release of the lienholder's security interest in a manner prescribed by the department. The lienholder shall . . .
>
>> b.  If there are no other lienholders named on the certificate of title, mail or deliver the certificate of title and release to the owner or the owner's designee. Within thirty days of receipt, the person receiving the certificate of title and release shall mail or deliver the certificate of title, release, and a fee of five dollars to the department. The department may prescribe further application procedures and, upon determining that there has been a proper compliance with these procedures, shall issue a new certificate of title and mail or deliver it to the owner or the owner's designee.

N.D.C.C. § 39-05-16.1(1)(b).

The Bank cites Georgia case law reviewing Alabama's title registration statute to support its position and suggests that this Court should adopt the reasoning in <u>Smith v. American Honda Fin. Corp.</u> (<u>In re Marshall</u>), 266 B.R. 554 (Bankr. M.D. Ga. 2001) since Alabama and North Dakota's statutes relating to motor vehicle title registration are almost identical.

Alabama Code section 32-8-64 states:

> (a)  Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he or she shall, within 10 days after demand execute a release of his or her security interest, in the space provided therefore on the certificate or as the department prescribes, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner, other than a dealer holding the vehicle for resale, shall promptly cause the certificate and release to be mailed or

delivered to the department, which shall release the lienholder's rights on the certificate or issue a new certificate.

Alabama and North Dakota's title registration statutes are very similar in structure. However, the Alabama Code has a separate statute within its Motor Vehicles and Traffic chapter that discusses perfection of security interests. Section 32-08-61 of the Alabama Code specifically states:

> (a)  Unless excepted by this section, a security interest in a vehicle for which a certificate of title is required by the terms of this chapter is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this article.
>
> (b)  A security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 30 days thereafter, otherwise, as of the time of the delivery.

North Dakota has no similar statute. The Bank glosses over the fact that the North Dakota Century Code has its own specific chapter relating to liens, chapter 35-10, and a statute relating to when a security interest in a vehicle is valid, section 35-01-05.1, as previously discussed. Further, case law has held that section 35-01-5.1 is the exclusive method by which a security interest in a motor vehicle may be perfected. Chapman, 113 B.R. at 563.

An unpublished case from the Northern District of Texas bears mentioning, Tarbox v. Soris (In re Biggerstaff), No. 03-5074, 2004 WL 3209524 (Bankr. N.D. Tex. June 23, 2004). This case reviews the registration statutes and case law for release of a security interest from Alabama, Georgia, and Texas and case law from In re Marshall, 266 B.R. 554 and Hope v. Bank of Upson (In re Coreley), No. 00-51297, 2001 WL 1855336, (Bankr. M.D. Ga. Aug. 1, 2001). 2004 WL 3209524 at *4-6. The Texas and Georgia registration statutes vary from North

Dakota's and Alabama's in that they contain the language "*may* submit the released title to the county assessor-collector and obtain a clean copy" instead of *shall*. Id. (emphasis added). The bankruptcy court for the Middle District of Georgia reasoned that satisfaction of the lien, i.e., payment of the debt, is a condition to the release being valid for both the Georgia and Alabama registration statutes. Id. at *6. The court in In re Biggerstaff concluded that such rationale implies that a lienholder cannot validly release its lien prior to the debt being paid, even if the lender actually intends to release the lien. Id. The court held that title registration statutes merely create a mechanism by which the lienholder must timely remit the title to the owner upon satisfaction of the debt and declined to adopt the rationale that the registration statutes provide the exclusive method of perfecting a lien. In re Biggerstaff, 2004 WL 3209524 at *6.

Although section 39-05-16.1 is similar to the Alabama statute in that it contains the language "shall mail or deliver the certificate of title", this Court declines to apply the strict reading as outlined by the Georgia court. This Court agrees with the Northern District of Texas bankruptcy court's interpretation that the title registration statute detailing release of a security interest merely creates a mechanism by which the lienholder must timely remit the title to an owner upon satisfaction. Should this Court adopt the Bank's reasoning, a lienholder would continue to hold a security interest in a vehicle even after the owner has paid the debt in full and after a lienholder signed the lien release merely because the owner failed to mail the title or pay a five dollar fee without any regard for section 35-01-05.1. This Court continues to uphold In re Chapman and continues to adhere to the position that section 35-01-05.1 is the exclusive method by which a security interest in a motor vehicle may be perfected. In re Chapman, 113 B.R. at 563. Therefore, in order to have a security interest in a motor vehicle, a secured party's interest

5

must either be noted on the face of the certificate of title or the certificate of title must be in possession of the security party. See In re Chapman at 562; In re Halvorson, 102 B.R. 736 (Bankr. D. N.D. 1989); In re Star Safety, Inc., 39 B.R. 755 (Bankr. D. N.D. 1984).

The Bank submitted a duplicate copy of the certificate of title, dated April 20, 2010, that reflects itself as a lienholder. Debtors suggest that the Bank deceivingly applied for a duplicate title which may only be applied for when an original title has been lost, stolen, mutilated, destroyed or becomes illegible. See N.D.C.C. § 39-05-09.1. None of these events occurred in this case. Further, Debtors allege that the Bank completed the application with full knowledge of Debtors' bankruptcy petition filing on February 11, 2010. The Bank admits that it signed the lien release on the original Certificate of Title following the refinancing of the vehicle and mailed it to Debtors. Debtors attached a copy of the original Certificate of Title to their response to the Bank's motion, so the Bank is well aware the original Certificate of Title is in Debtors' possession. The duplicate certificate of title specifically states, "THIS IS A DUPLICATE CERTIFICATE AND MAY BE SUBJECT TO THE RIGHTS OF A PERSON UNDER THE ORIGINAL TITLE."

In this case, there is no dispute that after Debtor Audrey Passa refinanced the 2007 HHR, that following the refinancing the Bank's agent signed the lien release on the original Certificate of Title, and Debtors have the original in their possession. The Bank knew the original title was not lost, stolen, mutilated, destroyed or illegible because it mailed the original to Debtors. Its conduct in requesting a duplicate copy when it had full knowledge that the original title was in the possession of Debtors is, at a minimum, questionable. Accordingly, the Court finds that the valid Certificate of Title is the original in Debtor's possession and the duplicate Certificate of

6

Title, issued on April 20, 2010, is invalid. Although the Bank stated the lien release was in error, it nonetheless released its security interest and lien when its agent signed the title and returned it to Debtors. Therefore, the Bank is an unsecured creditor.

Based on the foregoing, Gate City Bank's motion to lift the automatic stay is in all things, **DENIED**.

**SO ORDERED.**

Dated this July 12, 2010.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**